Filed 11/5/24  P. v. Ewers CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C100155 |
| Plaintiff and Respondent, | (Super. Ct. No. 15F02083) |
| v. | |
| CHARLES EWERS, | |
| Defendant and Appellant. | |

Defendant Charles Ewers appeals from the trial court's denial of his Penal Code section 1172.6 petition.  (Statutory section citations that follow are found in the Penal Code unless otherwise stated.)  Defendant argues the court engaged in impermissible factfinding when it found him ineligible for relief at the prima facie stage.  Because the court properly considered the factual basis from defendant's plea hearing when denying the petition, we affirm the order.

1

FACTS AND HISTORY OF THE PROCEEDINGS

In 2016, the People charged defendant with two counts of attempted murder (§§ 187, subd. (a), 664) and two counts of child abuse under circumstances likely to cause great bodily injury or death (§ 273a, subd. (a)). As to the attempted murders, the People alleged defendant committed the attempted murders willfully, deliberately, and with premeditation (§ 664, subd. (a)), personally inflicted great bodily injury on each victim (§ 12022.7, subd. (a)), and was armed with a mallet as to each victim (§ 12022, subd. (b)(1)).

Defendant ultimately pleaded no contest to both counts of attempted murder and admitted the great bodily injury allegation as to one count of attempted murder and the deadly weapon allegation as to the other count of attempted murder. At the plea hearing, the prosecutor recited the following factual basis: "On Saturday, April 4th, 2015, at around 9:24 p.m., Deputy Amend and Deputy Cook were dispatched to a missing persons call. The caller, [mother] reported that she was supposed to pick up her children, [D.] Doe and [S.] Doe, from their father, who had had them on a day trip. He was not home and not responding to their call.

"At approximately 9:35 that night, both deputies arrived at the home, which is located . . . in the County of Sacramento. Upon arrival, they found the house dark and it appeared nobody was home.

"Upon their exit, one of the deputies placed her hand on the garage door and noticed that it was hot. At that time she located her sergeant, who gave her clearance to bust down the garage door to find out if there was someone inside.

"Once the garage door came down, both deputies saw two children located in a running vehicle. Both kids were bloodied on the hands and on -- excuse me, on their faces and on their heads as well. Once they opened the garage, they took both children

2

out. The younger of the two, [D.], who was eight years old at the time, vomited in the parking lot -- or the garage driveway, and [S.] was shaken.

"Once deputies spoke with the defendant, he had indicated that he had attempted to kill his kids; that he was calm and in control of his capacities and that he had attempted to poison them with carbon monoxide.

"Upon -- I should note for the Court that there were hoses running from the exhaust pipe and into the area of the rear passenger seat where young [D.] was sitting.

"Once deputies entered the garage and exited the defendant from the vehicle, they saw there was an Airsoft gun on the driver's seat. The defendant, Charles Ewers, admitted to giving his children a dose of Ambien on the way home from the day trip in order to make them drowsy. However, when that did not work in making them drowsy, he took a mallet to them and beat them over the head on several occasions, causing them significant injury. [S.] suffered from a laceration to the head that required extensive suturing, as well as essentially missing the tip of her finger, which was, as the officers put it, filleted during the assault.

"Upon entry into the residence, your Honor, deputies located a note that apparently had been written by the defendant that said[,] 'car set up, blind, Ambien, cell phone with white noise, seal door, and start car.'

"[S.] Doe, who was at the time 11 years old, was awake through the entire endeavor and pleaded with her father not to kill both her and her brother.

"And last year during a jail phone call, Charles Ewers was speaking with his brother when he admitted that he had planned the assault and attempted murder for over a year."

After the prosecutor recited this factual basis, the trial court asked defense counsel if she had "[a]ny amendments or modifications to the factual basis?" Defense counsel responded, "We would disagree with the last statement regarding the context of the

3

statement with the brother, but we would submit on the rest of the factual basis." The trial court sentenced defendant to 14 years to life plus four years.

In 2023, defendant petitioned for resentencing pursuant to section 1172.6 alleging he could not presently be convicted of attempted murder because of recent changes to murder liability. The People opposed the petition, arguing that "[t]he factual basis was stipulated by petitioner in the change of plea" and, "[i]n doing so, petitioner admitted to directly attempting to kill his children . . . [t]here was no alternate party by which to impute malice. . . . As such, petitioner is ineligible as a matter of law." In response to this point, defendant argued that "all this court has for a factual basis is a barebones stipulation. No admitted facts. No admitted statements. It cannot defeat the petition."

The trial court issued a tentative order denying the petition. The tentative order explained that "neither the felony complaint, nor information, allege that anyone other than petitioner attempted to murder the victims. [Citation.] Petitioner does not offer any theory where liability could have been imputed to him. Furthermore, the factual basis given at the change of plea makes clear that petitioner was the sole perpetrator. Finally, the Court has reviewed the preliminary hearing transcript in this matter. The Court finds that neither party presented evidence at that hearing that indicates that anyone other than petitioner was the actual perpetrator of the attempted murders. [¶] On this record, the Court finds petitioner was not convicted of attempted murder under a theory where malice could be imputed to him." Following a hearing, the court adopted its tentative ruling.

Defendant timely appealed.

DISCUSSION

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) amended "the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual

4

killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Senate Bill 1437 achieved this, in part, by amending section 188, subdivision (a)(3) to state that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." This language effectively eliminated the use of the natural and probable consequences doctrine in murder prosecutions. (*People v. Gentile* (2020) 10 Cal.5th 830, 846.)

Senate Bill 1437 also created, in what is now section 1172.6, a mechanism for individuals convicted of first degree or second degree murder to petition for resentencing. Effective January 1, 2022, Senate Bill No. 775 (2021-2022 Reg. Sess.) expanded section 1172.6's coverage beyond those convicted of murder to include individuals convicted of "attempted murder under the natural and probable consequences doctrine." (Stats. 2021, ch. 551, § 2; § 1172.6, subd. (a).)

A section 1172.6 petitioner must make a prima facie showing that he or she is entitled to relief. (§ 1172.6, subd. (c).) The California Supreme Court has explained that "the prima facie inquiry under [section 1172.6,] subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) At this stage, the trial court should also not engage in factfinding involving the weighing of evidence or the exercise of discretion. (*Id*. at p. 972.) " 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Id*. at p. 971.)

5

Defendant does not dispute that, if he was the sole perpetrator of the attempted murders, he is ineligible for relief as a matter of law. Nor could he persuasively do so, as the application of the natural and probable consequences doctrine requires that multiple actors participate in the crime. (See *People v. Fisher* (2023) 95 Cal.App.5th 1022, 1026-1027 [explaining the natural and probable consequences doctrine as a theory of accomplice liability].) Rather, defendant contends that the trial court erred by concluding he was the sole perpetrator based on the charging documents, the preliminary hearing transcript, and the factual basis recited by the prosecutor at the plea hearing.

As a preliminary matter, defendant appears to argue that, regardless of which documents the trial court considered, the court could not conclude he was the sole perpetrator without engaging in impermissible factfinding. Defendant is incorrect, as *Lewis* expressly permits trial courts to consider facts contained in the record of conviction provided they do not engage in factfinding involving the weighing of evidence or the exercise of discretion. (*People v. Lewis*, *supra*, 11 Cal.5th at p. 970; see also *People v. Delgadillo* (2022) 14 Cal.5th 216, 222, fn. 2, 223, 232-233 [concluding "Delgadillo is not entitled to any relief under section 1172.6" at the prima facie stage where the record of conviction "makes clear that Delgadillo was the actual killer *and the only participant in the killing*," italics added].)

Regarding the trial court's reliance on the factual basis, defendant argues, citing *People v. French* (2008) 43 Cal.4th 36, 50-51, that " '[a] defendant is not required to personally admit the truth of the factual basis of the plea' " and " 'a defendant's stipulation to a factual basis' does not 'constitute[] a binding admission for all purposes.' " Defendant also argues he never even stipulated to the factual basis recited by the prosecutor because his "counsel merely 'submit[ted]' the issue to the trial court."

As to this latter point, we observe that defendant never argued in the trial court that in saying she "submit[ted]" on the factual basis, defense counsel was declining to stipulate to the factual basis. Rather, defendant agreed in the trial court that his counsel

6

had stipulated to a factual basis but maintained that the stipulation did not mean he admitted to the truth of the factual basis. In our view, defendant has forfeited this aspect of his argument by failing to raise it below. (See *People v. Covarrubias* (2016) 1 Cal.5th 838, 894 [concluding argument was forfeited on appeal because "[t]he trial court was not presented with this specific argument and hence, had no opportunity to rule on the issue"].)

In any event, we reject defendant's claim on the merits. While defendant was not required to admit the truth of the factual basis, we conclude he did so here through his attorney's concurrence in the prosecutor's recited statement. Defendant's attorney was asked whether there were any amendments or modifications to the factual basis. Thereafter, when submitting on the factual basis, defense counsel raised no objection to or modification of the stated factual basis or amendments to any of the facts stated by the prosecutor except those relating to defendant's discussions with his brother. If counsel believed any of the other recited facts were untrue, counsel would have affirmatively objected to them as she did regarding the discussions with the brother. By disagreeing only with that part of the factual basis and then "submit[ting] on the rest," defense counsel admitted the defendant took no issue with the remaining recited facts.

Accordingly, the trial court properly considered the factual basis in denying the section 1172.6 petition. In light of this conclusion, any error in the court's reliance on the preliminary hearing transcript or the charging documents is harmless because defendant has not shown it is reasonably probable that, had the court not considered those documents, the court would have issued an order to show cause. (See *People v. Lewis*, *supra*, 11 Cal.5th at pp. 957-958; *People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Hurtado* (2023) 89 Cal.App.5th 887, 893.)

7

DISPOSITION

The order denying defendant's section 1172.6 petition is affirmed.

 

                            _____

                            HULL, P. J.

We concur:

_____

MAURO, J.

_____

FEINBERG, J.